Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| JUAN LUIS ROSADO CAMERÓN<br><br>Apelante<br><br>v.<br><br>IFCO RECYCLING, INC.<br><br>Apelado | KLAN202300997 | *Apelación*<br>Procedente del Tribunal de Primera Instancia, Sala de Fajardo<br><br>Núm.: RG2020CV00279<br><br>Sobre: Procedimiento Sumario (Ley Núm. 2 de 17 de octubre de 1961, según enmendada) |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Juez Romero García y la Jueza Prats Palerm

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de mayo de 2024.

Comparece la parte querellante-apelante, Juan Luis Rosado Camerón (en adelante, ¨Sr. Rosado Camerón¨ o ¨apelante¨) mediante *Recurso de Apelación* y solicita que revoquemos la *Sentencia* emitida el 24 de octubre de 2023 y notificada el 26 del mismo mes y año por el Tribunal de Primera Instancia, Sala de Fajardo (en adelante, ¨TPI¨). Mediante el referido dictamen, el TPI declaró Ha Lugar la moción de sentencia sumaria presentada por el querellado, IFCO Recycling, Inc. (en adelante, ¨IFCO¨ o ¨apelado¨), y desestimó con perjuicio la *Querella* en el caso de epígrafe.

Por los fundamentos que expondremos a continuación, se *Confirma* la *Sentencia* apelada.

**I.**

Los hechos del caso de autos se remontan a una *Querella* presentada el 17 de agosto de 2020 por el Sr. Rosado Camerón en contra de su patrono, IFCO sobre violaciones a la Ley Núm. 115 del 20 de diciembre de 1991, 29 LPRA sec. 194 *et seq.*, (en adelante,

Número Identificador
SEN2024_____

¨Ley Núm. 115¨) y sobre el pago de comisiones adeudadas, Caso Núm. RG2020CV00279. La *Querella* fue instada al amparo de la Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118 *et seq.*, (en adelante, ¨Ley Núm. 2¨).

Surge de la *Querella* que, el Sr. Rosado Camerón laboró para IFCO como Ejecutivo de Cuentas desde el 2002. Conforme al contrato de empleo suscrito entre las partes, el Sr. Rosado Camerón recibiría el pago de comisiones a razón de 5% sobre la venta de atados, venta y/o alquiler de equipo de reciclaje y destrucción de material confidencial, más $1.00 por cada tonelada de material obtenida de nuevos clientes.

En mayo de 2019, el Sr. Rosado Camerón había instado una *Querella* sobre reclamación de salarios contra IFCO, en el Caso Núm. RG2019CV00317, del cual tomamos conocimiento judicial. La referida reclamación de salarios fue resuelta mediante *Sentencia* del 24 de julio de 2020 en la cual se declaró Ha Lugar una moción de desistimiento con perjuicio presentada conjuntamente por las partes, luego de que llegaron a un acuerdo de transacción.

El Sr. Rosado Camerón alegó que, funcionarios de IFCO lo sometieron a *un* patrón sistemático de conducta represiva como represalia por la *Querella* presentada en el 2019. En síntesis, alegó que, desde agosto de 2020, le habían impedido desactivar fuera de horas laborables el sistema de rastreo implementado en el teléfono celular provisto por el patrono. Además, el Sr. Rosado Camerón adujo que IFCO le adeudaba el pago de comisiones correspondientes desde marzo a junio de 2020. Por todo lo cual, solicitó el pago de las comisiones adeudadas y una suma no menor de $100,000.00 por concepto de daños y angustias mentales sufridas. De igual manera, solicitó el cese y desista de toda conducta represiva y violatoria a su derecho a la intimidad.

Durante el transcurso de los procedimientos, el 3 de noviembre de 2021, el Sr. Rosado Camerón presentó otra *Querella* contra IFCO, Caso Núm. FA2021CV00897, sobre represalias y despido constructivo. El querellante sostuvo que, presentada la *Querella* en el Caso Núm. RG2020CV00279, funcionarios de IFCO intensificaron y agravaron su patrón sistémico de conducta represiva. Como consecuencia, adujo que el 2 de febrero de 2021, se vio obligado a presentar su renuncia, la cual argumenta que constituyó un despido constructivo. Así, solicitó el pago de $138,461.53 por concepto de mesada e indemnización progresiva. Además, reclamó los salarios dejados de devengar y el pago una suma no menor de $500,000.00 por concepto de daños, sufrimientos y angustias mentales.

El 8 de febrero de 2022, los casos FA2021CV00897 y RG2020CV00279 fueron consolidados bajo el Caso Núm. RG2020CV00279.

Luego de varios trámites procesales y culminado el descubrimiento de prueba, el 14 de junio de 2023, IFCO presentó una *Moción de Sentencia Sumaria* en la cual solicitó la desestimación de la Querella de epígrafe. IFCO adujo que, de la prueba documental presentada y de la totalidad del expediente, no existía una controversia real y sustancial de hechos. Entre la prueba presentada por IFCO se encontraban: (1) declaraciones juradas de Zaida Guzmán Enseñat, Directora del Departamento de Recursos Humanos de IFCO, y Lee Marie Cruz Ramos, representante de Recursos Humanos de IFCO; (2) correos electrónicos enviados por funcionarios de IFCO al querellante, y; (3) transcripciones de las deposiciones realizadas al Sr. Rosado Camerón, y Guillermo Tous Rodríguez, Presidente de IFCO.

Por su parte, el Sr. Rosado Camerón presentó su *Oposición a la Solicitud de Sentencia Sumaria*. En apretada síntesis, arguyó que

en el caso de autos existían controversias de hechos sustanciales, los cuales impedían la resolución sumaria de la controversia. Añadió que, IFCO debía colocar al foro primario en posición de concluir que no existían controversias mediante la presentación de evidencia admisible. El querellante sostuvo que el Tribunal debía adjudicar la credibilidad de los testigos, previo a efectuar determinaciones de hechos. Para sostener sus alegaciones, el Sr. Rosado Camerón presentó la transcripción de la deposición que le fue realizada.

El 7 de septiembre de 2023, IFCO presentó una *Réplica a Moción en Oposición a Sentencia Sumaria* en la cual adujo que el Sr. Rosado Camerón no presentó evidencia admisible que demostrara la existencia de una controversia material de hechos que ameritara la celebración de una vista en su fondo. De igual manera, sostuvo que la oposición presentada por el Sr. Rosado Camerón descansó en meras alegaciones, incumpliendo así con la Regla 36.3 (b) (2) de Procedimiento Civil.

El 24 de octubre de 2023 el TPI dictaminó una *Sentencia*, notificada el 26 de octubre de 2023, mediante la cual declaró Ha Lugar la moción de Sentencia Sumaria presentada por IFCO y desestimó con perjuicio las querellas en el caso consolidado. El foro de instancia determinó lo siguiente:

> Toda vez que no existe controversia de hechos materiales al presente caso, entendemos que el mecanismo de sentencia sumaria es el que mejor dispone de este asunto, por lo que procedemos declarar CON LUGAR la Moción de Sentencia Sumaria presentada por IFCO. De conformidad con la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2, y la doctrina jurídica establecida por el Tribunal Supremo en el caso de *Pérez Vargas v. Office Depot/Office Max, Inc.*, 203 DPR 687, 703 (2019), se dicta esta Sentencia Sumaria, desestimando la Demanda en su totalidad.[1]

Inconforme, 6 de noviembre de 2023, el Sr. Rosado Camerón presentó un *Recurso de Apelación* solicitando la revisión de la

---

[1] Véase Apéndice de la Parte Apelante a la pág. 338 (Sentencia).

*Sentencia* notificada el 26 de octubre de 2023. El apelante realizó los siguientes señalamientos de error:

> **Erró el TPI al acoger la Moción Solicitando Sentencia sumaria presentada por la parte querellada-apelada y dictar Sentencia Sumaria existiendo hechos esenciales y sustanciales en controversia, los cuales ameritan la concesión de un juicio en su fondo.**
>
> **Erró el TPI al dictar Sentencia Sumaria acogiendo una Moción Solicitando Sentencia Sumaria insuficiente y la cual esboza alegados ¨hechos incontrovertidos¨ que no fueron sustentados con prueba admisible.**
>
> **Erró el TPI al dictar Sentencia Sumaria desestimando ambas Querellas, privando al Querellante-Apelante de su día en corte y acogiendo todos y cada uno de los alegados ¨hechos incontrovertidos¨ esbozados por la parte Querellada-Apelada.**

El 18 de diciembre de 2023, IFCO presentó su alegato en oposición.

Examinados los documentos que obran en el expediente y con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

**-A-**

El mecanismo de la *sentencia sumaria,* Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, le permite al tribunal disponer de un caso sin llevar a cabo una vista en su fondo. *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020). Dicho mecanismo procesal, es un remedio discrecional; el cual tiene como fin, la solución justa, rápida y económica de controversias, en que lo único por dirimir sean controversias de derecho. *Rodríguez Méndez et al. v. Laser Eye Surgery,* 195 DPR 769, 785 (2016).

Según el aludido precepto reglamentario, el promovente de la sentencia sumaria deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material. A su vez, el promovente deberá fundamentar su postura

haciendo referencia con "indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos". Regla 36.3(a)(4) de Procedimiento Civil, *supra.*

Por su parte, el promovido tiene que refutar los hechos alegados, con prueba que controvierta la exposición de la parte que solicita la sentencia sumaria. *León Torres v. Rivera Lebrón, supra,* 44. Así pues, la parte deberá *contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede.* Regla 36.3 (c) de Procedimiento Civil, *supra; León Torres v. Rivera Lebrón,* supra, pág. 43. Así las cosas, la parte que se oponga a una solicitud de sentencia sumaria, no podrá descansar en las aseveraciones o negaciones consignadas en su alegación. Regla 36.3(c) de Procedimiento Civil, *supra.*

Es conocido que, como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. *Ramos Pérez v. Univisión P.R., Inc.,* 178 DPR 200, 215 (2010). Específicamente, la Regla 36.5 de Procedimiento Civil, 32 LPRA Ap. V, R.36.5, establece que:

> [l]as declaraciones juradas para sostener u oponerse a la moción se basarán en el conocimiento personal del (de la) declarante. Contendrán aquellos hechos que serían admisibles en evidencia y demostrarán afirmativamente que el(la) declarante está cualificado(a) para testificar en cuanto a su contenido. 32 LPRA Ap. V, R.36.5; *Roldán Flores v. M. Cuebas,* et al., 199 DPR 664, 677-678 (2018).

Con respecto a la interpretación de la precitada Regla, nuestro Tribunal Supremo ha resuelto que *las declaraciones juradas que contienen solo conclusiones, sin hechos específicos que las apoyen, no tienen valor probatorio, siendo, por lo tanto, insuficientes para*

*demostrar la existencia de lo que allí se concluye. Íd.; Ramos Pérez v. Univisión P.R., Inc.,* supra, pág. 216. Más allá de contener hechos específicos sobre los aspectos sustantivos del caso, la declaración debe incluir *hechos que establezcan que el declarante tiene conocimiento personal del asunto declarado. Roldán Flores v. Cuebas et al.,* supra.

Asimismo, al momento de resolver una moción de sentencia sumaria es necesario que el tribunal considere a fondo las alegaciones de la demanda y las defensas presentadas. Ello, con el fin de establecer si existe controversia en cuanto a los hechos materiales o no. Por lo que, de existir dicha controversia, el tribunal no deberá declarar ha lugar una petición de sentencia sumaria. Además, cualquier duda habrá de resolverla en contra de la parte promovente. *Ramos Pérez v. Univisión, supra,* 217.

El Tribunal Supremo de Puerto Rico ha reiterado que, como regla general, no procede la sentencia sumaria en casos donde estén en controversia *elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad es esencial y está en disputa. Ramos Pérez v. Univisión,* supra, pág. 219. Tampoco procede emitir sentencia sumariamente cuando: (1) existan hechos materiales controvertidos (2) hay alegaciones afirmativas en la demanda que no han sido refutadas (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material o (4) como cuestión de derecho no procede. *Vera Morales v. Bravo,* 161 DPR 308, 333-334 (2004).

Como al momento de revisar las solicitudes de sentencia sumaria, estamos en la misma posición que el foro primario; nuestra última instancia apelativa ha establecido que la revisión será de *novo,* limitándose a solo considerar los documentos que se presentaron ante el TPI. *Meléndez González et al. v. M. Cuebas,* 193

DPR 100, 118 (2015). Por lo cual se descartan *exhibit[s], deposiciones o affidávit[s] que no fueron presentadas oportunamente en el foro de primera instancia* o *teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo. Meléndez González et al. v. M. Cuebas, supra,* págs. 114-115.

A tales efectos, este Tribunal de Apelaciones examinará el expediente de la manera más favorable hacia la parte que se opuso a la moción de sentencia sumaria en el foro primario. Además, revisaremos que la moción de sentencia sumaria y su oposición, cumplieron con los requisitos de la Regla 36 de Procedimiento Civil, *supra.* Por último, evaluaremos si existían hechos materiales en controversia, los que, en caso de haberlos, habremos de cumplir con los criterios de la Regla 36.4 de Procedimiento Civil, *supra,* y procederemos a exponer concretamente cuáles hechos materiales se encontraron que estaban en controversia y cuáles estaban incontrovertidos. *Íd.* Por el contrario, si encontramos que los hechos materiales del caso son incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente la norma jurídica aplicable a la controversia que tuvo ante sí. *Meléndez González et al. v. M. Cuebas,* supra, pág. 119.

**-B-**

La Ley Núm. 2-1961, también conocida como la Ley de Procedimientos Sumario de Reclamaciones Laborales, 32 LPRA sec. 3118 et. seq., provee un procedimiento sumario para la tramitación y adjudicación de pleitos laborales. La esencia del trámite sumario creado por la Ley Núm. 2, *supra,* es proveer un mecanismo judicial para que se consideren y adjudiquen querellas de obreros o empleados de manera rápida, principalmente en casos de reclamaciones salariales y beneficios. *Bacardí Corporation v. Torres Arroyo,* 202 DPR 1014, 1019 (2019) *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 732 (2016). Con su adopción, el

legislador pretendió brindarle a los obreros y empleados un mecanismo procesal judicial capaz de lograr la rápida consideración y adjudicación de las querellas que éstos presenten contra sus patronos. *Vizcarrondo Morales v. MVM, Inc.*, 174 DPR 921, 928 (2008); *Rivera v. Insular Wire Products Corp.*, 140 DPR 912, 923 (1996).

La naturaleza de este tipo de reclamación exige celeridad en su tramitación, pues de esta forma se adelanta la política pública de proteger al obrero y desalentar el despido injustificado. *Izagas Santos v. Family Drug Center*, 182 DPR 463, 480 (2011). Con el fin de adelantar su propósito, la ley estableció:

> [...] (1) términos cortos para la contestación de la querella presentada por el obrero o empleado; (2) criterios para la concesión de una sola prórroga para contestar la querella; (3) un mecanismo para el emplazamiento del patrono querellado; (4) el procedimiento para presentar defensas y objeciones; (5) criterios para la aplicación de las Reglas de Procedimiento Civil; (6) una limitación específica sobre el uso de los mecanismos de descubrimiento de prueba; (7) una prohibición específica de demandas o reconvenciones contra el obrero o empleado querellante; (8) la facultad del tribunal para dictar sentencia en rebeldía cuando el patrono querellado no cumpla con los términos provistos para contestar la querella, y (9) los mecanismos para la revisión y ejecución de las sentencias y el embargo preventivo. *Rivera v. Insular Wire Products Corp.*, supra, págs. 923-924. *Patiño Chirino v. Parador Villa Antonio*, 196 DPR 439, 446 (2016).

Reiteradamente nuestro más Alto Foro ha expresado *que [l]a esencia y médula del trámite fijado para casos sobre reclamaciones de salarios consagrado en la Ley Núm. 2 [...] constituye el procesamiento sumario y su rápida disposición. Desprovisto de esta característica, resulta un procedimiento ordinario más [...].* (Citas omitidas). *Rodríguez et al. v. Rivera et al.*, 155 DPR 838, 856 (2001). Es por ello que, la Ley de Procedimiento Sumario de Reclamaciones Laborales introdujo a nuestro ordenamiento jurídico un trámite especial y expedito para atender las querellas relacionadas con disputas laborales presentadas por empleados o empleadas, u

obreros u obreras en contra de sus patronos. En estos casos se aplicarán las Reglas de Procedimiento Civil en todo aquello que no esté en conflicto con las disposiciones específicas de las mismas o con el carácter sumario del procedimiento establecido por esta ley. *Díaz Santiago v. Pontificia Universidad Católica de Puerto Rico*, 207 DPR 339, (2021). (Escolios omitidos).

Como podrá observarse, el procedimiento sumario creado por la Ley Núm. 2, *supra,* es uno abarcador que al hacer un balance de los intereses envueltos impone la carga procesal más onerosa al patrono, sin que esto signifique que éste queda privado de defender sus derechos. *Rivera v. Insular Wire Products Corp.*, *supra*, pág. 924. En vista de su carácter reparador, esta ley debe ser interpretada liberalmente a favor del empleado. (Cita omitida). *Ruiz v. Col. San Agustín*, 152 DPR 226, 232 (1998).

**-C-**

La Ley Núm. 115 del 20 de diciembre de 1991, mejor conocida como la Ley de Represalias, 29 LPRA sec. 194, se aprobó con el fin de conferirle una herramienta a los trabajadores en contra de posibles actos de represalias por parte de los patronos, motivadas por el ofrecimiento de algún testimonio o alguna información ante ciertos foros. *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 668-669 (2017); *Cordero Jiménez v. UPR,* 188 DPR 129, 135-136 (2013). Esta ley protege a toda clase de empelado, con independencia de su clasificación y aplica a *todos los patronos por igual, sean estos públicos o privados.* Art. 1 Ley 115-1991, 29 LPRA sec. 194. El Art. 2(a) establece:

> (a) Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos

establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley. 29 LPRA sec. 194b(a).

Por otra parte, el Art. 2(c) de la Ley Núm. 115 establece el proceso probatorio aplicable para un tribunal dilucidar de la controversia. A saber:

> El empleado deberá probar la violación mediante evidencia directa o circunstancial. El empleado podrá además establecer un caso prima facie de violación a la ley probando que participó en una actividad protegida por esta ley y que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo. Una vez establecido lo anterior, el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido. De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido. 29 LPRA sec. 194b(c).

Así pues, el Tribunal Supremo de Puerto Rico recalcó que, para establecer un caso *prima facie* al amparo del referido estatuto, el empleado tendrá que probar mediante prueba directa o circunstancial: *(1) que participó en una de las actividades protegidas por la ley, y (2) que subsiguientemente fue despedido, amenazado o sufrió discrimen en el empleo. Feliciano Martes v. Sheraton,* 182 DPR 368, 393-394 (2011). En otras palabras, el empleado debe establecer que participó en una actividad protegida y luego fue despedido, lo cual establece una presunción *iuris tantum. Rivera Menéndez v. Action Service Corp.,* 185 DPR 431, 445-446 (2012). Por su parte, el patrono tiene la obligación de rebatir esta presunción justificando el despido. Revertido el peso de la prueba, el empleado podrá prevalecer en su reclamo si demuestra que la razón alegada por el patrono es un simple pretexto para el despido discriminatorio. *Feliciano Martes v. Sheraton, supra,* págs. 393-394.

**-D-**

La Ley Núm. 80 de 30 de mayo de 1976, conocida también como la *Ley de Despido Injustificado*, según enmendada, 29 LPRA

sec. 185a *et seq.,* fue creada con el fin primordial de proteger, de manera más efectiva, el derecho del obrero puertorriqueño a la tenencia de su empleo. A su vez, procura desalentar la práctica de despedir a los empleados de forma injustificada y otorga a los trabajadores remedios justicieros y consustanciales con los daños causados por un despido injustificado. Véase: Exposición de Motivos de la Ley Núm. 80, *supra.*; *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 424 (2013); *Feliciano Martes v. Sheraton, supra.*

El Artículo 2 de la Ley Núm. 80, 29 LPRA sec. 185b, detalla las circunstancias que constituyen "*justa causa*" para el despido e incluye motivos fundados en la conducta del empleado, así como circunstancias de índole empresarial. Así pues, en lo pertinente, las causas atribuibles a los empleados que constituyen justa causa para el despido se preceptúan en los incisos (a), (b) y (c) del Artículo 2, y son las siguientes:

> (a) Que el obrero siga un patrón de conducta impropia o desordenada.
>
> (b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.
>
> (c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas por el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado. [...] 23 LPRA sec.185b.

No obstante, a pesar de que la Ley Núm. 80 provee una lista de circunstancias que justifican el despido de un empleado o empleada, la precitada ley no pretende ser un código de conducta limitada a una lista de faltas claramente definidas con sus sanciones correspondientes. *Jusino et als. V. Walgreens,* 155 DPR 560, 573 (2001). A estos efectos, el patrono tiene la potestad de adoptar reglamentos internos y establecer normas de conducta en el lugar de trabajo que estime necesarias para conseguir el buen funcionamiento de la empresa. *Íd.* Los empleados estarán sujetos

a cumplir con dichos reglamentos y normas, siempre y cuando éstos cumplan con el criterio de razonabilidad. *Íd.* De este modo, para que las violaciones de las normas del empleo constituyan justa causa para el despido, el patrono tiene la obligación de probar la razonabilidad de las normas establecidas, que le suministró copia escrita de éstas al empleado y que el empleado las violó. *Rivera Águila v. K-Mart de P.R.*, 123 DPR 599, 613-614 (1942). En cambio, no se considerará despido por justa causa aquel que se hace por el mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento. *Srio. del Trabajo v. GP Inds., Inc.,* 153 DPR 223, 241 (2001).

En fin, el principio rector que gobierna el despido por justa causa dispuesto en el Artículo 2 de la Ley Núm. 80, *supra*, es aquel que delimita las circunstancias en que éste se produce. Es decir, cuando tiene su origen en alguna razón o motivo vinculado a la ordenada marcha y normal funcionamiento de una empresa y no en el libre arbitrio o capricho del patrono. *Íd.*

Finalmente, el Artículo 11 de la Ley Núm. 80, crea una presunción de que todo despido es injustificado. 29 LPRA sec. 185k. Por ello, el patrono, mediante preponderancia de prueba, debe demostrar lo contrario, es decir, que en efecto hubo justa causa para el despido. *Rivera v. Pan Pepin*, 161 DPR 681, 688 (2004*); Delgado Zayas v. Hosp. Interamericano***,** 137 DPR 643, 650 (1994); *Rivera Ánguila v. K-Mart de* PR, 123 DPR 599, 610 (1989).

-**E-**

La definición de ¨despido¨ contemplada por la Ley Núm. 80, abarca no solo la acción unilateral del patrono a cesantear a un empleado, sino también aquellas acciones dirigidas a inducirlo a renunciar. Esta última modalidad se conoce como despido constructivo o tácito. *Rivera Figueroa v. The Fuller Brush*, 180 DPR 894, 907 (2011).

El Tribunal Supremo de Puerto Rico ha descrito el despido constructivo como *aquellos actos voluntarios e injustificados de un patrono encaminados a obligar a un empleado a dejar su cargo, constituye un despido cuando la última alternativa razonable que le queda al empleado es abandonar el cargo. Vélez Reilova v. Palmer Bros*, 94 DPR 175, 178 (1967). Entre estos actos, se destacan el imponerle o intentar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra. 29 LPRA sec. 185e.

Para que se configure esta modalidad de despido tienen que existir unas actuaciones del patrono dirigidas a forzar al empleado a renunciar (despido disfrazado de renuncia), por lo que se requiere una actuación injustificada y deliberada de parte del patrono. *Figueroa Rivera v. El Telar*, 178 DPR 701, 711 (2010) Op. de Conformidad.  Así, para la aplicación de esta figura se requieren:

(1)  Uno o más actos voluntarios de parte del patrono;

(2)  Motivados por una razón ajena al legítimo interés de salvaguardar el efectivo desempeño de la empresa o por una motivación que pueda calificarse como caprichosa, arbitraria e irrazonable; y

(3)  Que cree una condición onerosa para el empleado que fuere inevitable la renuncia a su puesto. *Figueroa Rivera v. El Telar, supra*, pág. 713.

La magnitud y efecto de los actos del patrono no se determinará con referencia a una visión subjetiva del empleado individual; más bien se utilizará un criterio objetivo al examinar si una persona razonable se sentiría forzada a renunciar a su empleo como resultado de las acciones del patrono. *Rivera Figueroa vs. The Fuller Brush, supra*, págs. 908-909.

El Tribunal Supremo de Puerto Rico ha señalado que meros traslados de posiciones, el envío de memorandos en los cuales se señala la labor realizada, rebajas de salarios o cambios de

condiciones de trabajo, no dan lugar a un despido constructivo, ni configuran por sí solos una violación a la protección constitucional a la intimidad. Asimismo, expresó que *pueden concurrir un sinnúmero de condiciones onerosas que pueden llevar a un empleado a renunciar a su puesto, pero ello no necesariamente constituye un despido constructivo indemnizable.* Es preciso que tales actuaciones por parte del patrono sean arbitrarias, irrazonables y caprichosas; que generen una atmósfera hostil para el obrero que impida del todo su sana estadía en el trabajo; que sean originadas por un motivo ajeno al legítimo interés de salvaguardar el efectivo desempeño en el empleo, y que contengan expresiones claramente difamatorias o lesivas. *Sociedad de Gananciales v. Royal Bank de P.R.*, 145 DPR 178, 209 (1998).

En *Arthur Young & Co. v. Vega III*, 136 DPR 157 (1994), nuestra más alta instancia judicial estableció que "para que los actos voluntarios e injustificados del patrono constituyan un despido implícito para fines de la Ley 80, es preciso que el empleado *pruebe* que la única alternativa razonable que le quedaba era el abandono de su cargo". Es decir, no basta con una mera alegación de que la renuncia fue un despido constructivo. Como parte de la causa de acción al amparo de la Ley 80, hace falta demostrar el hecho base del despido, sea directo o en su modalidad constructiva o tácita. *Rivera Figueroa v. The Fuller Brush, Co.*, supra, págs. 908-909.

Las Guías Internas del Departamento del Trabajo, establecen que para que se configure el despido constructivo, es necesario que las acciones del patrono demuestren un nivel de seriedad considerable. Los simples mal entendidos o situaciones antipáticas que no tienen el efecto de crearle al empleado un ambiente intimidantemente hostil y ofensivo de trabajo, no constituyen un despido constructivo. Por el contrario, para que ocurra el despido

constructivo, las actuaciones del patrono deben ser arbitrarias, irrazonables y caprichosas y generar una atmósfera hostil para el obrero que impida del todo su sana estadía en el trabajo. Además, deben ser originadas por un motivo ajeno al interés legítimo de salvaguardar el bienestar de la empresa, las gestiones administrativas legítimas realizadas por el patrono con el único propósito de salvaguardar el bienestar de la empresa, no dan lugar a un despido constructivo, si no tienen la intención de lesionar la condición de empleado del trabajador. *Rivera Figueroa v. The Fuller Co., supra*, págs. 908-909.

### III.

En el caso de marras nos corresponde, en esencia, determinar si incidió el foro primario al conceder la *Solicitud de Sentencia Sumaria* incoada por la parte apelada. En el ejercicio de nuestra función revisora debemos: 1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; 2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; 3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; 4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas, Inc.*, *supra*, 679.

Cónsono con lo anterior, al realizar nuestra revisión *de novo*, nos corresponde, en primer lugar, determinar si la parte promovente de la moción de sentencia sumaria cumplió con lo dispuesto en la

Regla 36 de Procedimiento Civil, *supra*. Particularmente, si incluyó: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *Véase* 32 LPRA Ap. V. R. 36.3. *Pérez Vargas v. Office Depot /Office Max, Inc.*, 203 DPR 687 (2019).

Al evaluar la moción de Sentencia Sumaria instada por IFCO, constatamos que, en efecto, la parte promovente cumplió cabalmente con la precipitada Regla. La parte apelada presentó una bien fundamentada moción de sentencia sumaria, en la cual elaboró un total de 112 hechos que, según señaló, no están en controversia.

Es meritorio puntualizar que, IFCO cumplió cabalmente con las disposiciones de la Regla 36.1 y 36.3 (a), toda vez que, (1) hizo una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el

derecho aplicable, y (6) el remedio que debe ser concedido. Pudimos constatar que, en efecto, la parte apelada acompañó su solicitud de sentencia sumaria con la evidencia documental que apoya la misma debidamente identificada y sustentó en derecho su solicitud.

De igual forma, nos corresponde evaluar si el Sr. Rosado Camerón se opuso adecuadamente a la moción de sentencia sumaria. Al revisar ponderadamente la *Oposición a la Solicitud de Sentencia Sumaria* interpuesta por la parte apelante, nos percatamos de que, esta se limitó a refutar mediante meras alegaciones la *Solicitud de Sentencia Sumaria*. Consecuentemente, nos vemos forzados a concluir que el escrito en oposición presentado por el Sr. Rosado Camerón incumplió con lo dispuesto en la Regla 36.3 (b), *supra*.

La parte apelante únicamente acompañó a su *Oposición a la Solicitud de Sentencia Sumaria* la deposición realizada al Sr. Rosado Camerón. Tal y como reseñamos previamente, nuestra última instancia judicial ha resuelto que, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones. *Ramos Pérez v. Univisión, supra*, 215-216. Las meras afirmaciones no bastan. *Íd. Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. Ramos Pérez v. Univisión, supra*, pág. 215. (Cita omitida). *Roldán Flores v. M. Cuebas, Inc., supra*, 677. Surge del expediente que obra ante nosotros que, el Sr. Rosado Camerón no presentó prueba documental para controvertir los hechos esbozados por IFCO en la moción de sentencia sumaria. En cambio, IFCO acompañó su solicitud de Sentencia Sumaria de declaraciones juradas y amplia evidencia documental, además de las deposiciones realizadas, en apoyo de los hechos elaborados.

Se desprende de la prueba documental que, en marzo de 2020 la operación de la empresa fue paralizada como consecuencia de las restricciones impuestas debidas al COVID-19. Por esta razón varios empleados, incluyendo al Sr. Rosado Camerón, se mantuvieron temporeramente fuera de la operación de trabajo. Posteriormente, el 12 de junio de 2020, IFCO le notificó al Sr. Rosado Camerón que debía reinstalarse en su trabajo el 29 de junio de 2020.

Luego de reinstalarse en sus labores, el 29 de junio de 2020, le notificaron al apelante mediante correo electrónico que se estaría activando el sistema GPS del teléfono celular provisto por el apelado. Además, ese mismo día, se le cursó mediante correo electrónico un Acuerdo de Confidencialidad y No Divulgación de Información a ser firmado antes del 1 de julio de 2020. El mismo Acuerdo había sido cursado a toda la administración en el mes de mayo de 2020. Así las cosas, al 1 de julio de 2020, el apelante no había firmado el Acuerdo. No obstante, el Sr. Rosado Camerón no fue despedido ni suspendido por haberse negado a firmar el Acuerdo de Confidencialidad.

Comenzando en julio de 2020, según demostrado por un Memo enviado al apelante el 15 de julio de 2020, el dispositivo de GPS de su teléfono había estado desactivado o apagado desde que regresó a sus labores. El 4 de agosto de 2020, el Sr. Rosado Camerón fue objeto de otra acción disciplinaria por mantener desactivado o apagado el dispositivo de GPS de su teléfono de trabajo, en incumplimiento con la Política de Supervisión de la División de Ventas por Sistema de Posicionamiento Global. Ante dicha situación, IFCO cambió la configuración del sistema para que el apelante no pudiera desactivarlo manualmente. Por todo lo cual, se le explicó al apelante que debía apagar su celular corporativo a las 5:00pm y asegurarse de encenderlo a las 8:00am del próximo día laborable. Adicionalmente, se le explicó que el sistema estaba

diseñado para reportar su ubicación durante la jornada laboral exclusivamente.

El 8 de agosto de 2020, IFCO enmendó su Manual de Empleados y lo envió a todos sus empleados, el mismo fue firmado por todos, excepto por el Sr. Rosado Camerón.

El 13 de agosto de 2020, el apelante fue objeto de otra acción disciplinaria por mantener desactivado o apagado el sistema de rastreo del dispositivo. Debido a las reiteradas incidencias, el 11 de septiembre de 2020, se le comunicó al Sr. Rosado Camerón que debía comunicarse con la Sra. Lee Marie Cruz para que esta pudiera confirmarle el funcionamiento del sistema GPS.

Posteriormente, el 23 de octubre de 2020, se le brindó a todos los Ejecutivos de Ventas una presentación sobre la nueva manera de someter los informes semanales de las gestiones realizadas, mediante un sistema electrónico. El Sr. Rosado Camerón no envió los informes de la manera requerida, ya que entendió que el sistema lo haría automáticamente.

El 20 de noviembre de 2020, se le indicó al apelante que debía atender unos clientes en específico. El 7 de diciembre de 2020, el Sr. Tous le envió un documento al querellante, en la que le indicó sobre su incumplimiento en atender varios clientes que se le habían asignado y se le solicitó al querellante que le dedicara más tiempo y entusiasmo a su trabajo.

IFCO comenzó un proceso de reestructuración en la que se decidió que los vendedores no iban a estar asignados por zonas. Como parte del proceso, se le envió al apelante la Descripción del Puesto de Ejecutivo de Ventas. El Sr. Rosado Camerón indicó que, entendía que no le eran aplicables todas las disposiciones del documento.

El 28 de enero de 2021, el Sr. Rosado Camerón fue amonestado una última vez por el Sr. Tous. Finalmente, el Sr. Rosado Camerón renunció a su empleo el 2 de febrero de 2021.

Por último, la prueba presentada demostró que todas las comisiones y salarios debidos al apelante fueron pagados, luego de ser solicitados por este.

No surge de la prueba presentada que el apelante haya sido sometido a un patrón de conducta represiva o que su renuncia pueda ser considerada como un despido constructivo. Todos los empleados de IFCO fueron sujetos a las mismas exigencias y requisitos que el Sr. Rosado Camerón. Las acciones tomadas por IFCO sobre el sistema de rastreo y las nuevas normas implementadas no fueron dirigidas específicamente al apelante.

Resulta forzoso concluir que el foro primario no erró al declarar Ha Lugar la moción de Sentencia Sumaria y desestimar con perjuicio las causas de acción instadas por el Sr. Rosado Camerón.

**IV.**

Por los fundamentos expuestos, se *Confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones